UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JEROME LOUIS LEMMONS,
    Plaintiff,

    v.            10-3030

MARIE DURANT, et al.,
    Defendants. .

MEMORANDUM OPINION AND ORDER

  Before the court are the Defendants' Summary Judgment Motion [34], Plaintiff's response [37] and Defendants' Reply [38].

Standard

  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

  "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999). Failure by the

non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

Background

On February 6, 2010, Plaintiff, a resident of the Department of Human Services Rushville Treatment and Detention Center (Rushville) filed the instant Complaint pursuant to 42 U.S.C. §1983. On March 22, 2010, the court found that Plaintiff had stated a claim that Defendants failed to protect him from the risk of attack by another resident at Rushville. March 22, 2010 text order. Defendants assert that because no genuine issue of material fact exists that Defendants were not legally responsible for any injuries Plaintiff suffered while fighting with another resident, Defendants are entitled to summary judgment.

Undisputed Material Facts

1. Plaintiff has been a resident of Rushville Treatment and Detention facility for Sexually Violent persons since it opened in 2006. Exhibit A, Plaintiff's deposition pg. 19.
2. Plaintiff claims Defendants failed to protect him from an attack by resident Sebron Floyd on January 2, 2010. *See* Complaint, generally.
3. Plaintiff and resident Floyd had lived on the same living unit for approximately six months prior to January 2, 2010. Exhibit A, Plaintiff's deposition pgs. 20-21.
4. Prior to January 2, 2010, Plaintiff had not had any problems with resident Floyd but had heard that Floyd had repeatedly assaulted residents with his cane and had assaulted staff. Exhibit A, Plaintiff's deposition pg. 21.
5. Plaintiff had seen Floyd assault another resident approximately a month and a half before January 2, 2010. Exhibit A, Plaintiff's deposition pg. 23.
6. At around 3 or 3:30 pm on January 2, 2010, Plaintiff and Floyd had a disagreement in which Floyd wanted Plaintiff to falsify a grievance about STA Drane. Exhibit A, Plaintiff's deposition pg. 25.
7. When Plaintiff refused, Floyd became angry and stormed off. Exhibit A, Plaintiff's deposition pgs. 19-20.
8. Plaintiff did not inform any staff prior to the fight that he had any problem with Floyd. Exhibit A, Plaintiff's deposition pg. 31-32.
9. Later that evening, Plaintiff's living unit had a social event in which the residents could bring televisions and gaming systems out to the dayroom. Exhibit A, Plaintiff's

deposition pgs. 26-27.
10. Resident Floyd became upset approximately five minutes prior to the fight with Plaintiff because resident Hyron was being too loud and because Plaintiff asked Floyd to turn down his television. Exhibit A, Plaintiff's deposition pgs. 27-28.
11. Plaintiff, wearing a red sweatshirt and jeans, and Floyd, also wearing a red shirt and jeans, argued while both were sitting at the tables in the dayroom. Exhibit B, video at 6:10.1
12. Plaintiff got out of his chair walked over to Floyd, who was seated, and confronted him. Exhibit B, video at 6:10–6:20.
13. Another resident attempted to restrain Plaintiff, but Plaintiff jerked away. Exhibit B, video at 6:15.
14. Plaintiff and Floyd argued with each pointing at the other. Exhibit B, video at 6:20—7:15.
15. Plaintiff then took his gaming system and other electronic devices back to his room. Exhibit B, video at 7:30 to 9:30.
16. After continuing to argue for several minutes, Floyd left the dayroom and Plaintiff went back to his room. Exhibit B, video at 9:35.
17. At the time Plaintiff collected his possessions and went back to his room, no physical violence between Floyd and Plaintiff had occurred. Exhibit B, video generally to 9:35.
18. After resident Floyd came back into the dayroom, Plaintiff came out of his room, walked across the dayroom directly up to Floyd in a corner of the dayroom where the two argued face to face. Exhibit B, video at 9:50 to 10:10.
19. During the course of arguing face to face, a fight broke out between Floyd and Plaintiff. Exhibit B, video at 10:13 to 10:35.
20. The fight lasted 15 to 20 seconds. Exhibit B, video at 10:13 to 10:35.

Analysis

Defendants are entitled to summary judgment on Plaintiff's failure to protect claim. He alleges that Defendants failed to protect him from attack by another resident of Rushville, Sebron Floyd, on January 2, 2010. Although Plaintiff's failure to protect claim arises under the Due Process Clause of the Fourteenth Amendment and not the Eighth Amendment, there is little practical difference between the two standards. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005) (applying Eighth Amendment standard to failure to protect claim brought by pretrial detainee). To defeat summary judgment on a deliberate indifference claim, there must a genuine issue of material fact both that he suffered a substantial risk of serious harm and that the defendant was deliberately indifferent to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A substantial risk of serious harm means that the risk that Floyd would violently attack him was "'so great'" that it was "'almost certain to materialize if nothing [w]as done.'" *See Brown*, 398 F.3d at 91, *quoting Billman v. Indiana Department of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995). The video of the fight and Plaintiff's deposition testimony belie any claim that Floyd was "almost certain" to violently attack Plaintiff if nothing was done by Defendants. To the contrary, Plaintiff was responsible for any injury Floyd inflicted on him. Plaintiff testified that he and resident Floyd had lived on the same living unit for approximately six months prior to January 2, 2010, and had not had any problems, although Plaintiff knew that Floyd had assaulted other residents and staff. At around 3 or 3:30 pm on January 2, 2010, Plaintiff and

Floyd had a disagreement in which Floyd wanted Plaintiff to falsify a grievance about STA Drane. When Plaintiff refused, Floyd became angry and stormed off. Plaintiff did not inform any staff prior to the fight that he had any problem with Floyd. The video shows that Plaintiff was the aggressor in this situation. He jumped out of his seat and approached Floyd, who was seated, and, later, came out of his room and walked completely across the dayroom to confront Floyd a second time. It was the second time that Plaintiff confronted Floyd that the violence erupted. Plaintiff testified he knew that Floyd was dangerous prior to January 2, 2010. Nonetheless, Plaintiff chose to come out of his room to confront Floyd in an aggressive manner when he clearly could have avoided the situation by staying in his room or contacting staff. *See Matzker v. Herr*, 748 F.2d 1142, 1149 (7th Cir. 1984) (abrogated on other grounds) (plaintiff must identify who is threatening him and allow staff reasonable opportunity to protect him from harm). But he did not. He chose to handle Floyd himself. Plaintiff has no claim for failure to protect him once the fight started, as it only lasted around 15-20 seconds. *See Matzker*, 748 F.2d at 1150 (claim could be stated for failure to protect where allegation was that beating went on for 15-20 minutes and the defendant knew something was going on at the time). However, starting a fight or voluntarily participating in one and then getting the worst of it does not create a failure to protect claim. *See Santiago v. Walls*, 599 F.3d 749, 768 (7th Cir. 2010) (inmate cannot recover on a claim prison official was deliberately indifferent to a risk of harm posed by another inmate when the plaintiff started the fight).

In *Benner v. McAdory*, 34 Fed. Appx. 483, 484 (7th Cir. 2002) (non-precedential disposition), the plaintiff, who had informed prison officials that two gangs had a hit out on him, moved unescorted between dayroom and control booth looking for someone to safely escort him back to his cell. While waiting at his wing for an officer to lock him up, an inmate called out to the plaintiff that he had some important legal papers and that if the plaintiff did not immediately come and retrieve them, the inmate would throw them away. *Benner*, 34 Fed. Appx. at 485. The plaintiff approached the cell and as he reached for the legal papers, the inmate hurled boiling water on the plaintiff. *Benner*, 34 Fed. Appx. at 485. The Seventh Circuit affirmed the grant of summary judgment for the prison officials, stating as follows:

> Last is the fact that Benner himself was immediately responsible for the unfortunate incident. It was he who yielded to Felton's threat to destroy the legal papers and who placed himself in harm's way. It was he who decided to move through the prison unescorted, from the dayroom to the medical unit, from the medical unit back again, and finally back to the area of his cell. The four defendant prison officials cannot be labeled deliberately indifferent to Benner's safety when Benner's real complaint is that the officials were not controlling Benner himself more tightly. As the district court put it, the officials' actions were not the proximate cause of the harm that befell Benner, and thus they cannot be liable to him under §1983. *Benner*, 34 Fed. Appx. at 487; *see also Clark v. Johnson*, 181 Fed. Appx. 606, 607-08 (7th Cir. 2006) (nonprecedential disposition) (prison officials cannot be deliberately indifferent to a risk of the plaintiff's own making and cannot be reasonably required to protect an inmate who instigates a

violent conflict);

Here, Plaintiff created the situation by placing himself in harm's way by coming out of his room and confronting Floyd. Plaintiff, not Defendants, caused any injury Floyd inflicted on Plaintiff by confronting Floyd, despite every opportunity to avoid such a confrontation. Neither the State of Illinois nor its employees are the insurers of the safety of residents of its facilities against their own poor decisions. The court has reviewed the video and it conclusively establishes that Plaintiff confronted Floyd in an aggressive manner prior to the fight starting. *See Scott v. Harris*, 550 U.S. 372, (2007) (where video blatantly contradicts the plaintiff, the court is not required to accept the plaintiff's version of facts). Plaintiff he cannot maintain an Eighth (or Fourteenth) Amendment claim for failure to protect him. Accordingly, Defendants are entitled to summary judgment.

It is therefore ordered:

1. Pursuant to Fed. R. Civ. Pro. Rule 56, the defendants' motion for summary judgment [34] is allowed. The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C).

Enter this 4th day of October 2011.

\s\**Harold A. Baker**

_____
Harold A. Baker
United States District Judge